## 65214. STRICKLAND v. THE STATE.

DEEN, Presiding Judge.

Strickland was tried for murder and convicted of voluntary manslaughter, from which he appeals. We reverse.

1. In his first enumeration of error, appellant asserts that the trial court erred in finding Kit Strickland a/k/a Kit Kramer, a five-year-old child, competent to testify. We are constrained to agree with appellant that the trial court abused its discretion in allowing the child to testify.

The child actually was examined twice to determine his competency, once during a hearing on a motion in limine, and subsequently at trial. In pertinent part the examination at the motion hearing was as follows: "By the Court: How old are you, Kit? A. Five ... Q. Where do you live? A. I don't know where I live. Q. Huh? A. I don't know where I live. Q. You don't know where you live? A. Yeah, with Ronnie ... Q. Do you go to kindergarten? A. I used to go to school but I quit. Q. You quit school? A. (Witness nods head affirmatively.) Q. When was that? A. About eight days, I mean

eighteen years . . .

"Q. Do you know what it means when someone raises their right hand and swears to tell the truth? A. (Witness nods head affirmatively.) Q. What does it mean? A. I don't know. Q. Do you believe in God? A. (Witness nods head affirmatively.) Q. Sir? A. Yes, sir, I do. Q. What happens to people who tell lies? A. They get a whooping. Q. Get a whooping? A. (Witness nods head affirmatively.) Q. Have you ever told a lie? A. (Witness nods head negatively.) . . . Q. Do you know what would happen to someone who came into court and sat there in that chair and told a story, a lie, an untruth? A. (Witness nods head affirmatively.) Q. What? A. Well, it wasn't a long time when Sidney and them planted that pot . . . Q. What do you suppose — what do you suppose would happen if somebody sat there in that chair and told a lie in this courtroom? What do you think would happen to them? A. I don't know. Q. You don't know? Do you think it would be all right for you to come into court and tell a story? A. (Witness nods head negatively.) Q. Why? A. Cause. Q. Why don't you think it would be all right? A. Just don't.

"By Mr. Floyd [defense counsel]: Can you tell me the difference between telling the truth and telling a lie? A. (Witness nods head affirmatively.) Q. What's the difference? A. Telling a lie is bad. Telling the truth is not bad. Q. Have you ever told a lie? A. (Witness nods head negatively.) Q. Never have? A. (Witness nods head negatively.) Q. Do you know your ABCs? A. No, sir . . . Q. Do you know your days of the week? A. No. Q. Do you know how many days there are in a week? A. No. Q. Do you know what month this is? A. (Witness nods head negatively.) Q. Do you know how many months there are in a year? A. No." The child's testimony given at trial was substantially the same as above.

In determining whether a child is competent to testify in the trial of a case, it is not necessary that the child understand the meaning of the word "oath." *Lashley v. State,* 132 Ga. App. 427 (208 SE2d 200) (1974). The determinative factor is whether the child sufficiently understands the nature and obligation of an oath. *Pace v. State,* 157 Ga. App. 442 (278 SE2d 90) (1981); *Miller v. State,* 109 Ga. 512 (35 SE 152) (1899). The child must "appreciate the fact that as a witness he assumes a solemn and binding obligation to tell the truth relative to the case and concerning such matters as he may be interrogated on, and that if he violates the obligation he is subject to be punished by the court." *Smith v. State,* 247 Ga. 511 (277 SE2d 53) (1981). The determination is within the sound discretion of the trial court, and will not be disturbed by this court except for a manifest abuse of that discretion. *Pace v. State,* supra; *Thurmond v. State,* 220 Ga. 277 (138 SE2d 372) (1964).

In this case, we believe that the often contradictory and unresponsive testimony of the child indicated that the child did not yet possess sufficient intelligence to understand the nature of an oath or the penalty for its violation. See *Edwards v. State,* 162 Ga. 204 (132 SE 892) (1926). The trial court, in ruling that the child was competent, admitted that it was a close question, and we are of the opinion that the trial court abused its discretion in so ruling. Upon retrial, of course, the child may have matured sufficiently as to understand the responsibilities attaching to a witness, and thus become competent to testify at the new trial. *Pace v. State,* supra; *Miller v. State,* supra.

2. In his second enumeration or error, appellant contends that the trial court erred in not granting a directed verdict of acquittal on the grounds that the evidence was entirely circumstantial and did not exclude every reasonable hypothesis except appellant's guilt. " 'A defendant is entitled to a directed verdict only where there is no conflict in the evidence, and the evidence introduced, with all reasonable deductions and inferences therefrom, demands a verdict of not guilty.' " *Benjein v. State,* 158 Ga. App. 794, 795 (282 SE2d 391) (1981); *Causey v. State,* 154 Ga. App. 76, 77 (267 SE2d 475) (1980). A review of the record indicates that the matter was properly submitted to the jury because of the conflicting evidence of appellant's motive and intent. There was sufficient presentation of evidence regarding the history of appellant's ill treatment of and cruelty towards the victim to counter appellant's innocent intent claimed, so that jury resolution was appropriate.

3. Because of the ruling in Division 1, we need not address appellant's assertion that the trial court erred in ruling that the state's witness from the state crime laboratory would be allowed to testify in rebuttal. Upon retrial, the problem will be eliminated because the state will be able timely to provide appellant with a copy of that witness' scientific report.

4. Appellant next asserts that the trial court erred in allowing a state's witness to read to the jury a statement previously made by the child witness. The record shows that upon cross-examination, counsel for appellant questioned the state witness about a portion of a conversation between the witness and the child. Over appellant's objection, the state was then allowed to read the remainder of the statement. "[W]here counsel for one party elicits from a witness part of a conversation, the other side is entitled to have the witness state all that was said at the time and in the same conversation." *Jackson v. State,* 60 Ga. App. 142 (1) (3 SE2d 147) (1939); *Betts v. State,* 66 Ga. 508 (1881). Under this principle, the trial court properly admitted the testimony.

5. Appellant also asserts that the trial court erred in admitting the testimony of the victim's mother, brother, and son, on the grounds that the testimony was irrelevant, and prejudicially placed appellant's character in issue. These witnesses testified about domestic difficulties between appellant and the victim, as well as themselves, which culminated in appellant's violent rage; the incidents recounted by the witnesses dated from about three and one-half years to nine months before the victim's death. The witnesses had had little contact with appellant during the nine month period preceding the homicide because of appellant's actions.

Where a husband is on trial for murdering his wife, as in the case sub judice, " 'evidence tending to show a long course of ill treatment and cruelty on his part toward her, continuing until shortly before the homicide, is admissible. Such evidence tends to show malice and motive, and to rebut the presumed improbability of a husband murdering his wife.' " *Wells v. State,* 135 Ga. App. 421, 422 (218 SE2d 131) (1975); *Cobb v. State,* 185 Ga. 462, 464 (195 SE 758) (1938). " 'Evidence showing bad feeling between the defendant and the deceased is ordinarily admissible in a homicide trial, even though the evidence relates to an incident which occurred several years before the homicide.' " *Wells v. State,* supra at 422.

The testimony of these three witnesses clearly related to a "course of ill treatment and cruelty" of appellant to the victim, although the incidents recounted were not so close in time to the homicide. This time factor alone, however, particularly where the diminished contact between the witnesses and appellant (and the victim) had been insisted upon by appellant, does not make the testimony inadmissible, and the trial court properly allowed the testimony.

6. Appellant next contends that the trial court erred in admitting the results of the breath test administered to appellant, because it had not first been shown that the director of the state crime laboratory had approved the testing machine or that the operator had been certified. To support that proposition, he relies upon Rule 570-9-06 (6) of the Rules of the Department of Public Safety, and *State v. Baker,* 146 Ga. App. 608 (247 SE2d 160) (1978).

Appellant's argument is inapposite, since it pertains to admissibility of intoximeter results in cases involving the defendant's driving or control of a vehicle while under the influence of alcohol or drugs. Quite simply, the intoximeter results were not submitted for that purpose in this case; rather, the results were submitted merely to show that appellant had been drinking. Because appellant's testimony disclosed his alcohol consumption, even if the intoximeter requirements of the uniform rules of the road extended to this case,

the evidence was cumulative and its admission would be at most harmless error.

7. Appellant's last three enumerations of error concern the trial court's failure to give certain of his requested jury charges. It is not error to refuse to give instructions in the exact language requested, where the charge actually given substantially covers the applicable principles of law. *Hall v. State,* 155 Ga. App. 724 (272 SE2d 528) (1980); *Kelly v. State,* 241 Ga. 190 (2) (243 SE2d 857) (1978). Further, in reviewing a charge, the entire charge must be considered. *Brownlee v. State,* 155 Ga. App. 875 (273 SE2d 636) (1980). We find no error in the trial court's failure to give certain of appellant's requested charges, because the jury instructions given by the court actually covered the same principles of law.

Appellant requested that the trial court charge the jury that "where the facts in evidence and all reasonable deductions therefrom present two theories, one of guilt and the other consistent with innocence, the justice and humanity of the law compel the acceptance of the theory which is consistent with innocence." The charge actually given by the trial court provided that "to warrant a conviction on circumstantial evidence the proven facts shall not only be consistent with the hypothesis of guilt but shall exclude every other reasonable hypothesis save that of the guilt of the accused. It is not necessary that the state remove every possibility of the defendant's innocence." Although the actual charge may not be as clear as the charge requested, it did embody the same law; it is not error for a trial court to decline to be redundant. The Supreme Court approved the requested charge in *Geter v. State,* 226 Ga. 236 (173 SE2d 680) (1970), but it certainly did not mandate use of the charge.

Appellant also requested that the trial court charge the jury "that if you find in this case that the event was an accident, unmixed with any intent or design on the part of the defendant, then in that event, it would be your duty to acquit him of the offense charged against him." However, the trial court did instruct the jury on the statutory definition of accident, which provided that a person shall not be found guilty where the event was a misfortune or accident and it satisfactorily appears that there was no criminal scheme, undertaking, intention, or criminal negligence. The trial court's charge obviously contained the identical substance of appellant's requested charge, and thus was not error. *Hall v. State,* supra.

Lastly, appellant requested that the court charge that "where the defendant's statement is consistent with the physical facts shown, the defendant's explanation of the homicide must be accepted." We do not believe that such is a completely accurate statement of the law applicable to this case, and thus uphold the trial

court's refusal to give that charge. Appellant relies upon the rule in *Harrell v. State,* 108 Ga. App. 295 (2) (132 SE2d 787) (1963), where the defendant's explanation of the homicide was uncontradicted by the state. Where other evidence is presented that contradicts the defendant's explanation, however, the trier of fact may reject the defendant's explanation, even if it alone is consistent with the physical facts. *Pollard v. State,* 249 Ga. 21 (287 SE2d 189) (1982); *Stevens v. State,* 247 Ga. 698 (278 SE2d 398) (1981). There was sufficient evidence of ill feeling and wrongful intent to allow the jury's rejection of appellant's explanation in this case.

Inasmuch as the law embodied in the requested charge was inappropriate for the facts of this case, the trial court properly declined to give it to the jury. It further appears that the general principle of law involved in the requested charge was adequately covered by the trial court's charge on the presumption of innocence and the state's burden of proof.

*Judgment reversed in part and affirmed in part. Sognier and Pope, JJ., concur.*

DECIDED NOVEMBER 22, 1982 —
REHEARING DENIED DECEMBER 16, 1982.

*George C. Floyd,* for appellant.
*Gilbert A. Murrah, District Attorney, Edward C. Parker, Paul Fryer, Assistant District Attorneys,* for appellee.