## A91A0277. SANDERS v. THE STATE.
### (405 SE2d 727)

ANDREWS, Judge.

Sanders appeals his conviction for possession of cocaine and marijuana which arose out of his arrest at his friend Jerome Carter's[1] apartment incident to the execution of a search warrant for that residence.

Viewed in favor of the verdict, evidence at trial established that Sanders and Carter, who is confined to a wheelchair, were close friends. Sanders helped Carter with various household errands; in exchange Carter allowed Sanders (who lived with his grandmother) and his girl friend to conduct their love affair in his apartment.

At approximately 10:30 p.m. on the night of his arrest, Sanders went to Carter's apartment and met his girl friend. Sanders and his girl friend went to the back bedroom and conducted their affair and the girl friend left.

When the police arrived at 1:15 a.m., they found Sanders lying naked on a bed in the bedroom with the television on and Carter lying on a bed in the living room. On the bedroom floor, the police found marijuana, partially smoked marijuana cigarette butts, and a "crack can" (for smoking crack cocaine). On the nightstand in the bedroom, they found crumbs of rock cocaine in a closed matchbox, a cocaine pipe, and cigarette rolling papers. According to an officer's testimony, several of these items were within "arm's reach" of Sanders. No drugs were found on Sanders and drugs were not being used at the time of the arrest, although a police officer testified that a marijuana cigarette in the bedroom looked like it had been smoked recently.

Although Sanders did not live at Carter's apartment, evidence showed that he was a frequent visitor there. An officer testified that a month before the instant arrest, a search warrant was issued on Carter's apartment and that Sanders had also been present at the apartment during the earlier search.

1. In his first enumeration of error, Sanders claims that he was denied a fair trial because the State referred to co-defendant Carter

[1] Jerome Carter, who pled guilty to drug possession charges, was a co-defendant in the case. During the strip search of him, a matchbox containing 3.8 grams of cocaine fell out of his underwear.

as a "convicted drug dealer." Sanders did not object to the question at trial and the issue will not be addressed for the first time here. *Chambers v. Dept. of Transp.*, 172 Ga. App. 197 (322 SE2d 366) (1984); *Management Comp. Group &c. v. United Security &c.*, 194 Ga. App. 99 (389 SE2d 525) (1989). The issue here is not a question of "fundamental fairness," so as to obviate the need for an objection at trial, since the complained of question did not reference Carter's conviction or plea in this case. See *Boatwright v. State*, 193 Ga. App. 141 (387 SE2d 386) (1989).

2. Sanders argues that the evidence against him was insufficient to establish constructive possession since most of the cocaine was found on Carter, who owned the apartment and had at least equal access to it. In evaluating Sanders' argument, the evidence must be viewed in a light most favorable to the verdict, and appellant is no longer shielded by a presumption of innocence. See *Norman v. State*, 197 Ga. App. 333 (398 SE2d 395) (1990).

At the outset, we note that Sanders was not convicted for possession of the cocaine which fell out of Carter's underwear. The cocaine on which Sanders' conviction was based was found in the closed matchbox on the nightstand in the bedroom.

Possession may be joint or exclusive, and actual or constructive. *Dalton v. State*, 249 Ga. 720, 721 (292 SE2d 834) (1982); *Stevens v. State*, 165 Ga. App. 814 (302 SE2d 724) (1983). " 'The difference between actual and constructive possession is one of degree and they "often so shade into one another that it is difficult to say where one ends and the other begins." [Cits.] Where drugs are found in the "immediate presence" of the defendant, the jury is authorized to find they are "in the constructive possession" of the accused.' " *Farmer v. State*, 188 Ga. App. 375, 376 (373 SE2d 68) (1988); *Garvey v. State*, 176 Ga. App. 268, 274 (335 SE2d 640) (1985); *Wisdom v. State*, 234 Ga. 650, 654 (217 SE2d 244) (1975).

Here, there was sufficient evidence for the jury to find that Sanders constructively possessed the drugs, since it was established that he visited the apartment frequently, that he regularly used the bedroom there and that the drugs were in his immediate presence. This conclusion is not changed by the fact that the evidence would have authorized a finding that others had equal access to the same drugs. *Farmer*, supra at 376; *Ramsay v. State*, 175 Ga. App. 97, 100 (332 SE2d 390) (1985); *Pamplin v. State*, 164 Ga. App. 610, 611 (298 SE2d 622) (1982).

3. Sanders argues that it was error to admit evidence of a prior marijuana conviction since his character was not in issue. Although we agree that Sanders did not put his character into issue within the meaning of OCGA § 24-9-20 (b), it was proper to allow evidence of his prior drug possession charge to disprove his statement that he did not

use drugs.

The introduction of Sanders' prior conviction here was permissible since the State was rebutting specific testimony. See *Bland v. State*, 198 Ga. App. 671 (402 SE2d 782) (1991). The conviction was not introduced to show that Sanders was a person of bad character, but rather to prove the apparent falsity of his statement. *Jones v. State*, 257 Ga. 753 (363 SE2d 529) (1988). As such, the conviction constituted impeachment, not character, evidence and was properly admitted. *Williams v. State*, 257 Ga. 761 (363 SE2d 535) (1988).[2]

The situation here is analogous to that in *Mitchell v. State*, 158 Ga. App. 628, 630 (281 SE2d 260) (1981), in that Sanders' statement that he did not use drugs could have been construed as a denial that he had ever used marijuana or committed any offense involving the drug. Sanders' argument that the case is controlled by *Moses v. State*, 190 Ga. App. 699 (379 SE2d 819) (1989), is without merit.

4. In his next enumeration of error, Sanders argues that the trial court erred in admitting evidence of his prior conviction when the State failed to provide notice of intent under Uniform Superior Court Rule 31.3. This argument was not raised in the trial court and will not be considered for the first time here. *Kress v. State*, 195 Ga. App. 519 (394 SE2d 139) (1990).

5. Finally, Sanders contends that the State violated discovery requests by failing to give him the result of a urine test which was negative for both cocaine and marijuana use. The alleged error arose out of Sanders' *Brady* request which specifically sought the results of any scientific tests which were favorable to him. Although Sanders' counsel contends that he did not know of the drug test until after the trial, the record indicates otherwise.

On February 20, 1990, the court below conducted an in camera examination of the State's file, at which time the district attorney indicated twice that the laboratory results would be supplied to defense counsel upon receipt from the crime lab.[3] On March 5, 1990, the Court entered an Order which confirmed the State's agreement to produce these documents. There is no indication from the record that defense counsel made any effort to obtain the test results in the intervening months between the order and the jury verdict. Sanders did not raise the issue at trial.

At the hearing on his motion for new trial, Sanders raised the

---

[2] Because in this case the evidence was properly admitted for purposes of impeachment, we reach no conclusions as to whether such evidence was admissible for other purposes. See OCGA § 24-9-20; *Story v. State*, 196 Ga. App. 590 (396 SE2d 547) (1990); *Jones*, supra; *Williams*, supra.

[3] Because of the State's representation that the test results would be produced, we do not reach the issue of whether such report was available to the district attorney so as to require production. See *Paggett v. State*, 188 Ga. App. 174 (372 SE2d 504) (1988).

subject of the urine test results for the first time in six months, contended that he did not know of the lab test until post-trial and argued that the failure of the State to produce the test results was error. In support of his motion, Sanders called as a witness the supervisor of the drug laboratory who testified that Sanders' urine test results were sent to the Superior Court on January 16, 1990. Sanders does not explain his failure to call this witness at trial nor does he explain his failure to obtain the test results independently from the court.

In the context of the discovery statute, OCGA § 17-7-211, this court has stated: " '[w]here the defendant is told of the information or knows as much as the prosecution does and has an equal opportunity to obtain the document from a non-affiliated witness, it is not a violation of the statute for the state to fail to produce it in response to a demand for scientific reports.' " *Worth v. State*, 183 Ga. App. 68, 72 (358 SE2d 251) (1987); *Paggett v. State*, 188 Ga. App. 174 (372 SE2d 504) (1988). In applying that logic here, we find no indication from the record that Sanders was unable to obtain the test report himself. He cannot simply neglect to compel production of the report before trial and then complain after trial that its absence prejudiced him. See *Campbell v. State*, 191 Ga. App. 390 (381 SE2d 599) (1989).

Further, despite Sanders' arguments to the contrary, he was, as a matter of law, aware of the existence of the urine test before trial. In *Cunningham v. State*, 248 Ga. 558 (284 SE2d 390) (1981), the Supreme Court ruled that there was no error where the State failed to produce the defendant's own allegedly exculpatory statements because " '*Brady* applies to' the discovery, after trial, of information which had been known to the prosecution but unknown to the defense. [Cits.]" *Cunningham*, supra at 561; see also *Pridgett v. State*, 173 Ga. App. 409 (326 SE2d 581) (1985). Here, Sanders is deemed to have known of the test both because he was the subject of it, and because of the pretrial representations by the State. Accordingly, for both of these reasons, there was no error in the State's failure to produce the results.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED APRIL 25, 1991 —
REHEARING DENIED MAY 8, 1991.

*Neal Weinberg*, for appellant.
*Britt R. Priddy, District Attorney, Henry O. Jones III, Assistant District Attorney*, for appellee.