A92A0099. KOSAL et al. v. THE STATE.
(420 SE2d 621)

SOGNIER, Chief Judge.

Pyda and Chanary Kosal were convicted of arson in the burning of their Douglas County residence, and they appeal from the denial of their motion for new trial.

Late on the night of March 21, 1988, the Douglas County Fire Department received calls from appellant Pyda Kosal and another person who was driving through the neighborhood that the back of

appellants' split-level home was on fire, and fire fighters arrived at the scene five minutes later. Fire Department Division Chief Scott Spencer testified that as he scrutinized the fire scene while the fire fighters were working to bring the fire under control, he observed conditions that caused him to suspect the fire had been deliberately set. He noted that the house seemed to contain few family photographs or other personal belongings; the size and rate of burning of the fire were consistent with the use of an accelerant; and he could ascertain no apparent accidental cause of the blaze. County and state arson investigators testified that they had concluded from an examination of the scene that the fire had been intentionally set by the pouring of a flammable liquid onto the floor and carpet in the stairway and bedrooms. Each witness testified extensively concerning the bases for his conclusion, listing as primary indicators the presence of obvious pour patterns at several points in the house, which shows an accelerant was used; the fact that the fire obviously had multiple points of origin; and the presence of burn patterns consistent with the pour patterns and use of an accelerant and inconsistent with an accidental fire. The investigators ruled out all other causes of the fire, including the explanation Mr. Kosal had given police. The investigators also testified that the two-story addition appellants had recently built themselves was poorly constructed, and noted that in their experience the desire to obtain insurance proceeds to rebuild an inferior structure was a common motivation for arson.

The conclusions of the arson investigators were consistent with the findings of an investigator engaged by appellants' insurer to determine the cause of the blaze and by a private arson investigator originally employed by appellant's counsel. In addition, the insurance investigator testified that he tested the kerosene heater in the bedroom and affirmatively determined that it did not cause the fire. The evidence also established that appellants regularly used that and two other kerosene heaters in the portion of the house in which the fire occurred and that they stored kerosene, a flammable liquid, in the house.

Additional evidence was adduced that appellants were experiencing financial problems at the time of the fire and that the house was fully insured. Both appellants had worked for a furniture manufacturer for several years, but Mr. Kosal had resigned his position the previous summer to start a residential construction business. The evidence established that at the time of the fire appellants had numerous past due bills; foreclosure proceedings had been instituted by their second mortgage holder two months earlier and halted after appellants borrowed the necessary funds from a friend; appellants had written a number of bad checks in the months prior to the fire; and several lawsuits had been filed against Mr. Kosal in connection with

his construction business. Ms. Kosal testified that for several months before the fire, she worked a full day at the factory and then went to her husband's construction job sites to help so that he could finish the jobs and get paid.

Appellants testified that on the night of the fire they awoke around midnight and discovered a blaze between the kerosene heater and the wall in their bedroom. Mr. Kosal testified that he unsuccessfully attempted to put out the fire with water and a fire extinguisher. He ran downstairs to phone for help, but the telephone was not working. Appellants then fled the home with their small son and drove to a nearby pay phone and called the fire department. Appellants denied intentionally setting the fire.

1. Appellants contend in three enumerations of error that the trial court erred by denying their motions to suppress the evidence seized in three searches of their residence. They contend Mr. Kosal's consent to the first two searches was not freely and voluntarily given, and that evidence obtained in the third search, made pursuant to a warrant, should be suppressed as fruit of the unlawful first searches.

(a) Mr. Kosal's consent to the first search was obtained in the early morning hours while the fire was being brought under control. He was seated with fire department investigator Don Leasher in the front seat of Leasher's marked car, and two other fire department officials stood beside the car on appellant's side. Leasher testified that he made no threats or promises of benefit to appellant and that he did not detain appellant in order to obtain his consent. Leasher stated that appellant, a Cambodian national with two years of college education, spoke English well and appeared to have no problems understanding Leasher's conversation. Leasher testified that he read the consent form, which included the warnings required by *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966) to appellant one section at a time, ascertaining after each section that appellant understood. Leasher stated that appellant consented to the search, stated he did not want an attorney, and never withdrew his consent.

Mr. Kosal signed the consent form for the second search two days later after being questioned for several hours at the sheriff's office by Leasher, another fire department official, and two detectives. Appellants went to the sheriff's office in response to a telephone request from a detective, and Mr. Kosal was escorted through a locked door into an office in the back of the building. Detective Scott Cosper testified that he gave the *Miranda* warnings at the beginning of the interrogation, that he made no threats or promises of benefit, and that he read the consent form to Mr. Kosal and ascertained that he understood it. Cosper testified further that Mr. Kosal spoke good English and had no communication problems and that he never mentioned having an attorney or wanting an attorney present during the interro-

gation. Cosper stated Mr. Kosal was not under arrest and was free to leave at any time, and that he did leave with Ms. Kosal after the questioning was concluded. Other participants in the questioning corroborated Cosper's recollection of the events.

Mr. Kosal testified that he signed the first consent form only because Leasher told him this was "just procedure" that "everybody ha[d] to do." As to the second consent, Mr. Kosal testified that during the interrogation he did not feel he was free to leave; that he had called his attorney to come to the sheriff's office and so informed the detectives, but they told him he did not need counsel; that the detectives screamed at and threatened him; and that he felt he had to sign whatever they asked. However, Mr. Kosal also testified that he did not object to the officers searching his house and that he had been willing to answer their questions. Ms. Kosal testified that as she waited in the lobby while her husband was being questioned at the sheriff's office, she saw their attorney arrive in the lobby and confer with an officer. She stated the attorney left about an hour later without having been allowed to see Mr. Kosal.

The State bears the burden of proving that consent to a warrantless search was freely and voluntarily given, and voluntariness is determined by looking to the totality of the circumstances. E.g., *Hunter v. State*, 190 Ga. App. 52, 53 (378 SE2d 338) (1989). Factors to be considered include the age, education, and intelligence of the accused, the length of any detention of the accused, whether the accused was advised of his constitutional rights, the prolonged nature of the questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. Id. When a defendant moves to suppress evidence, the trial judge sits as trier of the facts, and the judge's findings are analogous to a jury verdict and should not be disturbed by an appellate court if there is any evidence to sustain them. *Jones v. State*, 200 Ga. App. 519 (1) (408 SE2d 823) (1991).

As to the first search, Mr. Kosal testified that his wife and a friend who spoke excellent English also were present while he talked with Leasher and that he understood he was not under arrest. Under these circumstances, and considering also Leasher's testimony concerning appellant's consent, we reject appellant's contention that the presence of several fire department officials was so oppressive as to require a finding of coercion. See *Williamson v. State*, 142 Ga. App. 177 (1) (235 SE2d 643) (1977); see also *Suddeth v. State*, 162 Ga. App. 460 (1) (291 SE2d 430) (1982). Likewise, given the totality of the circumstances, Mr. Kosal's testimony that he did not understand he could refuse to authorize the search provides no basis for reversal. See *United States v. Watson*, 423 U. S. 411, 424-425 (96 SC 820, 46 LE2d 598) (1976); see also *Suddeth*, supra.

With regard to the second search, we need not decide whether

Mr. Kosal was in custody at the time he signed the consent form because "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." *Watson*, supra at 424; see *Howard v. State*, 185 Ga. App. 465, 466 (1) (364 SE2d 600) (1988). Although the evidence as to Mr. Kosal's claim that he requested his counsel be present is in conflict, the trial judge concluded he had not clearly invoked his right to counsel, and we find evidence in the record to support that conclusion, especially considering Mr. Kosal did not testify at the hearing that he wished to consult with counsel and cease the interrogation, but testified instead that he had been willing to continue and that he did not object to the searches. See generally *Steward v. State*, 182 Ga. App. 659, 660 (1) (356 SE2d 890) (1987).

(b) Having found that Mr. Kosal's consent to the first two searches was freely and voluntarily given, we hold that the subsequent search warrant, the issuance of which was based on the evidence obtained from the first two searches, was valid. See *Giles v. State*, 197 Ga. App. 895, 897 (2) (400 SE2d 368) (1990). Accordingly, the trial court did not err by denying appellants' motion to suppress.

2. The evidence was sufficient to authorize a rational trier of fact to find appellants guilty of arson beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see *Skinner v. State*, 188 Ga. App. 458-459 (373 SE2d 271) (1988). Contrary to appellants' assertion, the State did exclude every reasonable hypothesis other than the guilt of the accused and expressly rebutted appellants' theory that the fire was caused by the kerosene heater. See *Bragg v. State*, 175 Ga. App. 640-642 (1) (334 SE2d 184) (1985).

3. Appellants' enumeration concerning the trial court's refusal to allow their trial counsel to listen to a tape recording of the calls made to the fire department the night of the fire presents no reversible error. Appellants have failed to show either that they were entitled to obtain production of the tape by subpoena or that its contents, which merely corroborated defense testimony that two calls reporting the fire were made, were relevant to a material issue in the case. Compare *Eason v. State*, 260 Ga. 445 (396 SE2d 492) (1990). Even assuming, without deciding, that the tape was subject to review under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), the trial judge listened to the tape and determined it contained no exculpatory material. The burden is on appellants to establish a *Brady* violation, *Cromer v. State*, 253 Ga. 352, 358 (6) (320 SE2d 751) (1984), and that burden has not been satisfied here because appellants " 'ha[ve] not come forward with anything to suggest a suppression of material, exculpatory information by the state. . . .' [Cit.]" Id.

4. Appellants next contend the trial court erred by not requiring the State to produce, pursuant to appellants' motion under OCGA §

17-7-211, any reports prepared by the county, state, and insurance company arson investigators. OCGA § 17-7-211 (b) provides that upon proper written request from the defendant, the State must produce copies of "any written scientific reports in the possession of the prosecution which will be introduced in whole or in part against the defendant." The term "written scientific reports" is defined in the statute as GBI Forensic Sciences Division reports, autopsy reports, blood alcohol test reports, "and similar type reports that would be used as scientific evidence by the prosecution in its [case] against the defendant," id. at (a), and has been held to include written reports of "tests which generally are carried out during the course of the investigation of a crime," *State v. Mulkey*, 252 Ga. 201, 203 (312 SE2d 601) (1984), but not to include "the body of scientific experience, training, and knowledge which the . . . specialist brought to the stand in his capacity as an expert." Id.

Pretermitting the question whether appellants properly preserved this issue for appeal, we agree with the State that any reports prepared by the county and state arson investigators did not constitute "scientific reports" within the meaning of OCGA § 17-7-211 because their analyses of the fire scene were based upon their general knowledge gleaned from experience and training rather than on any tests performed on material taken from the scene. See *Mulkey*, supra; see also *Ramsey v. State*, 165 Ga. App. 854, 856-857 (2) (303 SE2d 32) (1983). To the extent that the insurance investigator's report fell within the definition of "scientific reports" in OCGA § 17-7-211 (which we cannot ascertain with certainty because the report was not admitted into evidence or otherwise included in the appeal record), the report originated from and was maintained by a neutral third party not employed by the State, and the investigator was listed as a witness in advance of trial. When " ' "the defendant is told of the information or knows as much as the prosecution does and has an equal opportunity to obtain the document from a non-affiliated witness, it is not a violation of [OCGA § 17-7-211] for the state to fail to produce it in response to a demand for scientific reports." ' [Cit.]" *Sanders v. State*, 199 Ga. App. 671, 674 (405 SE2d 727) (1991); see *Paggett v. State*, 188 Ga. App. 174, 175 (372 SE2d 504) (1988). Moreover, appellants failed to object at trial to any testimony of the investigator that may have been based on the report, and thus they waived their objection to the admission of any scientific test results contained in the report. *Ford v. State*, 256 Ga. 375, 379 (2) (c) (349 SE2d 361) (1986).

5. Appellants having provided neither argument nor citation of authority as to their enumeration concerning the alleged failure of the prosecution to produce their custodial statements, that enumeration is deemed abandoned pursuant to Court of Appeals Rule 15 (c) (2).

6. In two enumerations of error appellants contend the trial court

erred by refusing to enforce a subpoena duces tecum appellants served on the fire department and to issue a writ of habeas corpus ad testificandum sought by appellants. With regard to the subpoena, pretermitting the question whether it was enforceable, the trial court reviewed in camera the evidence appellants sought under the subpoena and concluded it was not relevant to any issue in the trial. Likewise, the request for the writ was subject to extensive discussion at trial, and the court denied the request on the basis that even if the witness did testify as appellants contended he would, that testimony would not be relevant to appellants' case, "The trial court has a wide discretion in determining what evidence is relevant and material, and we find no abuse of that discretion here. [Cit.]" *Scott v. State*, 178 Ga. App. 222, 225 (4) (343 SE2d 117) (1986).

7. Appellants' challenge to the trial court's failure to charge on circumstantial evidence in the exact language they requested is without merit, for in a case involving almost identical requested and actual charges, this court held that the language of the charge given "actually covered the same principles of law" as the charge requested by the defendant, *Strickland v. State*, 164 Ga. App. 845, 849 (7) (297 SE2d 491) (1982), and thus it was not error to fail to give the instructions requested by appellants. Id.

*Judgment affirmed. McMurray, P. J., and Cooper, J., concur.*

DECIDED JUNE 29, 1992.

*John A. Pickens*, for appellants.
*David McDade, District Attorney, William H. McClain, Assistant District Attorney*, for appellee.