A98A1994. SMITH v. THE STATE.
(506 SE2d 406)

ELDRIDGE, Judge.

Defendant-appellant Larry D. Smith appeals the denial of his motion for new trial, which followed his conviction for armed robbery, forgery, and driving with a suspended license. We affirm.

Viewed in the light most favorable to the jury's verdict, the facts are as follows: On September 1, 1993, Debra Jean Marshall was employed by the United States Postal Service and was delivering mail in Columbus, Muscogee County. At approximately 11:35 a.m., as Marshall was reaching into her truck to retrieve some mail, she was confronted by a man who pointed a gun at her chest. She turned, ran up the street while screaming, and flagged down a vehicle. The driver of the vehicle and his passenger stopped and let Marshall get into the car. Marshall and the witnesses testified that the robber then fled in a tan Toyota Corolla, which was driven by another person. The Toyota had a baby seat in the back seat. The witnesses were unable to identify the driver except to note that he was "slouched down in the seat and he had on dark sunglasses, low hair cut, black male." The witnesses took Marshall to a house, where Marshall called the police. After the police arrived, Marshall returned to her truck and discovered that mail for certain addresses was missing; she testified that several government benefits checks were included in the missing mail. The next day, a notice was sent to banks in the area regarding the stolen checks.

Within an hour after the robbery, defendant Smith arrived at the apartment of Schlunda Wilson; Wilson described her relationship with Smith as "hustling buddies." Wilson testified that Smith had told her earlier in the day that he had "some business to take care of" and would contact her later. Between 12:00 noon and 1:00 p.m., Smith picked up Wilson and asked her to help him cash some checks. Smith was wearing dark sunglasses and was driving a brown Toyota

Corolla with a baby seat in the back. The pair went to a separate location and had identification cards made which showed their pictures but used the names that were on the stolen checks. Utilizing the ID cards, Wilson and Smith cashed a check at a liquor store; they also cashed a check at Trust Company Bank.

However, the Trust Company Bank teller became suspicious about the transaction because the identification card was unfamiliar to him, the driver of the Toyota Corolla seemed to be nervous and impatient, and the driver avoided looking into the surveillance cameras. Acting on these suspicions, the teller noted on the back of the check the vehicle's tag number, as well as its make and model. The bank's security cameras also photographed the vehicle in the drive-through banking line. When the teller received the stolen checks notice the next day, he notified his supervisor that he had cashed one of the checks.

Smith and Wilson had more identification cards created the next day and attempted to cash a check at another bank. However, the teller noticed that the ID card looked "funny." She had already received the stolen checks notice, and she notified her supervisor that the street name on the check matched those on the notice. While the teller stalled Smith and Wilson for several minutes, the branch manager wrote down the vehicle's tag number and called police. Smith then told the teller that he could wait no longer and asked for the check back; a bank supervisor told him that he would have to come into the bank to retrieve the check. However, Smith sped off down the street.

The police quickly apprehended the pair, who were identified by the bank teller. At the time of his arrest, Smith had $1,118 in his pants pocket. Several fictitious Georgia ID cards were recovered in the glove compartment of the Toyota Corolla; the names on the cards matched those of the intended recipients of some of the stolen checks. The police later found several stolen checks on the ground where the vehicle had been stopped and, later, towed away. The checks were wrapped in a newspaper-type mailing. Wilson had alerted police that, at the time of the arrest, Smith had kicked the checks under the car. The evidence presented also showed that the Toyota Corolla used during the check-cashing incidents belonged to Smith's sister, and that Smith had access to the vehicle on the day of the armed robbery.

Smith was indicted for armed robbery, first degree forgery, and driving with a suspended license. He was tried on April 4-5, 1994, and was convicted by a jury on all counts. His motion for new trial was denied, and he appeals. *Held*:

1. In his first enumeration of error, Smith contends that the trial court erred when it denied his motion for new trial based upon his assertion that he was denied effective assistance of counsel at trial.

On appeal, Smith specifically cites counsel's failure to object when a witness for the State allegedly placed his character in evidence and counsel's decision to waive an opening statement. Smith also refers indirectly to allegations of ineffective assistance that were raised in his motion for new trial.[1]

"In order to establish ineffectiveness of trial counsel under *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984), appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy." (Citations and punctuation omitted.) *Stephens v. State*, 265 Ga. 120, 121-122 (453 SE2d 443) (1995). See also *Hudson v. State*, 218 Ga. App. 671, 672 (462 SE2d 775) (1995). In order to rebut this presumption, appellant must show that "counsel's representation fell below an objective standard of reasonableness. [Cit.]" *Knight v. State*, 266 Ga. 47, 48 (4) (464 SE2d 201) (1995). "The trial court's ruling that counsel's performance did not fall below an objective standard of reasonableness and that [appellant] failed to show a reasonable probability that the result would have been different but for the alleged errors must be upheld unless those findings are erroneous." *Harris v. State*, 268 Ga. 412-413 (490 SE2d 96) (1997).

(a) Smith asserts that trial counsel's performance was deficient because he failed to object to the following exchange between the State and Wilson: "[State:] How did you know [Smith]? [Wilson:] Well, I met Larry a couple of years ago. And I would say about two years after I met him he disappeared. Come to find out he was in prison." The State did not pursue questioning based upon this response, but immediately began questioning the witness about the day of the robbery.

(i) As a threshold issue, this Court finds that the witness' statement was non-responsive to the question asked by the State. See *Cochran v. State*, 177 Ga. App. 471, 473 (3) (339 SE2d 749) (1986). Further, Georgia's courts have consistently held that similar statements fell short of placing the defendant's character in evidence. See, e.g., *Zellner v. State*, 260 Ga. 749, 751 (3) (b) (399 SE2d 206) (1991);

---

[1] Generally, these allegations involved trial counsel's alleged failure to communicate with Smith; failure to file certain motions upon Smith's request; and mistakes during voir dire. Smith also asserted that he was "not pleased" with counsel's representation of him during trial.

*Johnson v. State,* 256 Ga. 604, 605 (2) (351 SE2d 623) (1987); *Cochran v. State,* supra at 473, and cases cited therein.

(ii) However, even if the statement impermissibly placed Smith's character in issue, trial counsel's failure to object did not rise to the level of ineffective assistance of counsel. Such restraint may reasonably be seen as an issue of trial strategy, i.e., intentionally avoiding an objection which would draw the jury's attention to the witness' statement. See *Fargason v. State,* 266 Ga. 463, 465 (2) (467 SE2d 551) (1996). "[A]s a general rule, matters of tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Milliken v. State,* 230 Ga. App. 810, 812 (2) (b) (498 SE2d 127) (1998). On a motion for new trial which asserts ineffective assistance, it is the defendant's burden to present affirmative evidence to rebut the presumption that, "in the absence of contrary evidence, counsel's actions are presumed strategic in nature. [Cits.]" *Milliken v. State,* supra at 813; *Hudson v. State,* supra at 672. Smith failed to carry this burden, so that the trial court's finding on this issue was not clearly erroneous.

(b) After reviewing Smith's remaining allegations of deficient performance by trial counsel, we find that the allegations are not supported by any evidence in the record or can reasonably be construed as issues involving trial strategy. See *Hudson v. State,* supra at 673 (1) (b). Accordingly, Smith was not entitled to a new trial on the basis of ineffective assistance of counsel.

2. Smith also contends that he was denied his right to a fair and impartial jury panel, asserting that he had a statutory right to a panel of 30 *qualified* jurors, i.e., 30 jurors who could not be excused for cause. However, Smith apparently misunderstands the statutory requirements for jury panels. Under OCGA § 15-12-160, a defendant in a non-death penalty felony trial is entitled to a panel of 30 jurors, of which at least 12 jurors must be qualified to serve. Although, generally, "under OCGA § 15-12-162, a challenge to the jury array must be in writing" to be considered on appeal, *Lysfjord v. State,* 208 Ga. App. 811, 812 (2) (432 SE2d 247) (1993), this Court will consider Smith's contentions on its merits.

There is no dispute that 35 jurors were impaneled for this trial. The State voir dired the panel in accordance with OCGA § 15-12-164 (a) and received no responses. However, Smith claims that 11 members of the panel were, in his opinion, "suspect" because of varying levels of familiarity with the neighborhood of the crime, the witnesses, or the district attorney. The defense made no motion to strike any of these jurors for cause.[2] While choosing the jury, the defense

---

[2] The State successfully moved to strike one juror for cause.

exercised ten of its twelve peremptory strikes; the State struck five jurors. Of the twelve selected jurors, the defense admits that only two of the "suspect" jurors were actually chosen to serve, i.e., juror nos. 21 and 27. Accordingly, the only remaining issue is whether these two jurors should have been excused for cause.

Smith argues that juror no. 21 knew a police officer witness, and that juror no. 27 previously had a Social Security check stolen. However, neither of these assertions rises to a basis for dismissing a juror for cause under OCGA § 15-12-163 (b). Further, both jurors testified that such familiarity would not influence them regarding their duty as jurors in this case. Accordingly, neither juror was subject to dismissal for cause. There was no error.

3. In his third enumeration, Smith complains that there was a fatal variance between the indictment for armed robbery and the proof at trial. Essentially, he asserts that the evidence showed that he was, at most, a party to the crime, but that he was indicted as a principal. This enumeration lacks merit.

Under OCGA § 16-2-20 (b) (3), a person is a party to the crime when he "[i]ntentionally aids or abets in the commission of the crime." A party may be charged with and convicted of the crime under OCGA § 16-2-20 (a). See also OCGA § 16-2-21. Although the State was required to prove that Smith was a party to the crime under these Code sections at trial, it was not necessary to allege these provisions in the indictment. See *State v. Military Circle Pet Center No. 94*, 257 Ga. 388, 389-390 (360 SE2d 248) (1987).

In this case, the first count of the indictment charged Smith with armed robbery, i.e., taking government checks from a postal employee, with intent to steal, through the use of a pistol. The evidence supported a finding that Smith aided and abetted the armed robbery by acting as the getaway driver for the actual assailant, who has not been identified. Accordingly, the State "was authorized to indict appellant for [armed robbery] since he 'aided and abetted' [the assailant] in the commission of the offense. [Cit.]" *Thompson v. State*, 168 Ga. App. 734, 736 (4) (310 SE2d 725) (1983). See also *Lawrence v. State*, 227 Ga. App. 70, 72 (4) (487 SE2d 608) (1997); *Carter v. State*, 168 Ga. App. 177, 178 (3) (308 SE2d 438) (1983). There was no fatal variance between the allegata and the probata.

Such indictment also was sufficient to ensure that Smith was informed of the charges against him and protected against another prosecution for the same offense. See OCGA § 17-7-71 (c); *Berger v. United States*, 295 U. S. 78, 82 (55 SC 629, 79 LE 1314) (1935); *DePalma v. State*, 225 Ga. 465, 469-470 (169 SE2d 801) (1969); *Johnson v. State*, 172 Ga. App. 333 (323 SE2d 255) (1984). Although Smith alleges that his defense would have been different had he not been "ambushed," he fails to explain this contention by showing how the

evidence presented at trial was a surprise, or by pointing to any evidence in the record or in a proffer to the trial court which would have been affected by the wording of the indictment. See id. at 334. There was no error.

4. In his next two enumerations of error, Smith contends that the State violated his rights under *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), by failing to provide exculpatory evidence. We disagree.

"When a due process violation is claimed under [*Brady*], it is necessary that the defendant indicate the materiality and the favorable nature of the evidence. The defendant has the burden of showing that the evidence withheld from him so impaired his defense that he was denied a fair trial within the meaning of the *Brady* Rule." (Citations and punctuation omitted.) *Kress v. State*, 195 Ga. App. 519, 520 (3) (394 SE2d 139) (1990). Specifically, he must show "(1) that the State possessed evidence favorable to the defense; (2) that the defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." (Citations omitted.) *Zant v. Moon*, 264 Ga. 93, 100 (3) (440 SE2d 657) (1994); *Ramsay v. State*, 220 Ga. App. 618, 624 (6) (469 SE2d 814) (1996).

(a) Smith claims that a taped statement by Wilson was "clearly" exculpatory because it "could have been used to aid in preparing for cross-examination of Wilson." However, Smith admits that a "synopsis" of the statements was given to defense counsel prior to trial.

"Nothing in the record shows the tape would have been beneficial to [Smith], and the evidence indicates that [Smith] and his counsel were cognizant of the tape's general contents." *Bertholf v. State*, 224 Ga. App. 831, 832 (482 SE2d 469) (1997). Accordingly, any assertions that the tape contained exculpatory evidence that would have affected the outcome of the trial is mere speculation which is unsupported by the record and fails to satisfy Smith's burden to establish a *Brady* violation. See id. at 832; see also *Kosal v. State*, 204 Ga. App. 708 (420 SE2d 621) (1992). This enumeration is without merit.

(b) Smith also contends that the State withheld evidence concerning an alleged deal with Wilson which would have provided favorable treatment in exchange for her guilty plea and her testimony against Smith. However, during cross-examination, Wilson stated that she was "not guilty" of the crimes charged, that she had so pled, and that no promises of favorable treatment or immunity had been made to her or discussed with prosecutors. Further, by denying Smith's motion for a new trial, the trial court "implicitly concluded that no agreement existed" between Wilson and the State.

*Jolley v. State*, 254 Ga. 624, 629 (5) (331 SE2d 516) (1985). See also *Prescott v. State*, 175 Ga. App. 125 (333 SE2d 8) (1985). This conclusion is authorized by the record before this Court on appeal, wherein Smith is unable to point to any evidence which supports his contention of a deal for favorable treatment of Wilson. Accordingly, this enumeration is without merit. See *Childress v. State*, 268 Ga. 386, 388 (489 SE2d 799) (1997); *Prescott v. State*, supra at 125-126.

5. Next, Smith complains that his constitutional right to cross-examine Wilson was violated when the trial court sustained an objection to one of his questions. However, upon review of the transcript, it is clear that the trial court did not, in fact, limit his cross-examination of Wilson, but simply required defense counsel to restate his question in the proper form.[3] There was no error.

6. Smith claims that the State made improper remarks in his closing argument which inflamed and prejudiced the jury. He challenges two references by the State that $1,118 found in Smith's pants pocket was the result of his cashing some of the stolen checks. However, according to testimony of the arresting officer, at the time of the arrest, Smith had $1,118 in his pants pocket. Wilson also testified that she had assisted Smith in cashing at least two stolen checks on the previous day.

"Attorneys will be allowed all reasonable latitude in the argument of cases to a jury provided they do not go outside the facts legitimately appearing from the trial and 'lug' in extraneous matters as if they were part of the case. Counsel may draw remote deductions and inferences from the evidence and there is no basis for objection even if the deductions and inferences are illogical or unreasonable." (Citations omitted.) *Callahan v. State*, 179 Ga. App. 556, 563 (5) (347 SE2d 269) (1986). Because the challenged references were inferences from evidence presented during the trial, there was no error.

7. Finally, Smith contends that the evidence was insufficient to support the guilty verdict. In separate but related enumerations, Smith complains that the guilty verdict on the armed robbery charge was a result of circumstantial evidence which did not exclude every other reasonable theory other than guilt, and that his conviction for armed robbery was based on the uncorroborated testimony of an accomplice.

(a) "Although the evidence of recent, unexplained (or unsatisfac-

---

[3] The State objected to defense counsel's inquiry to Wilson as to whether or not she was "guilty" of acquiring identification cards with names other than her own, reasoning that the word "guilty" was a "legal term." Defense counsel immediately rephrased the question, to wit: "Did you participate in getting these cards with your picture on them and somebody else's name on them?" After Wilson responded "Yes," counsel said "Okay. All right. Good enough."

torily explained) possession of stolen goods may be sufficient to give rise to an inference that the defendant committed the [robbery], the sufficiency of the evidence to support the conviction must still be adjudged by the totality of the evidence under the reasonable doubt standard applied in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. Once it is shown that goods were stolen in a [robbery], absence of or unsatisfactory explanation of the possession of the goods will support a conviction for [robbery] based upon recent possession of the stolen goods. Whether a defendant's explanation of possession is satisfactory is a question for the jury; so is lack of explanation. What constitutes recent possession is in all cases a jury question, to be determined very largely from the character and nature of the stolen property." (Citations and punctuation omitted.) *Hanson v. State*, 229 Ga. App. 205, 206 (1) (493 SE2d 605) (1997). See also *Williams v. State*, 252 Ga. 7, 9 (310 SE2d 528) (1984); *Hestley v. State*, 216 Ga. App. 573 (455 SE2d 333) (1995); *Bolar v. State*, 216 Ga. App. 195, 197 (4) (453 SE2d 790) (1995); *Slater v. State*, 209 Ga. App. 723 (434 SE2d 547) (1993); *Bankston v. State*, 159 Ga. App. 342, 343-344 (4) (283 SE2d 319) (1981).

In the case sub judice, the verdict reflects that the jury, after hearing all of the evidence, concluded that the only reasonable explanation for Smith's possession of the stolen checks was his participation in the armed robbery. The evidence showed, inter alia, that someone robbed a postal employee at gunpoint at 11:35 a.m. on September 1, 1993; that a second man, wearing dark glasses and "slouching down" in the front seat, acted as the get-away driver; and that specific government checks were stolen. In addition, there was evidence of Smith's comments to Wilson prior to the robbery; his unexplained possession of specific stolen checks within hours of the armed robbery; his possession of his sister's car, the same vehicle as that utilized in the armed robbery; and similarities in his appearance to that of the getaway driver. Finally, supporting such evidence of his participation in the armed robbery was his possession of fake identification cards matching the names on the stolen checks; his forgeries of the stolen checks; and his attempt to flee the bank when he realized that a bank employee was writing down the vehicle's tag number. The totality of the evidence is sufficient under the standard of *Jackson v. Virginia*, supra, to authorize the jury's verdict that Smith is guilty, beyond a reasonable doubt, of aiding and abetting an armed robbery. See *Hanson v. State*, supra; *Bolar v. State*, supra; *Gearin v. State*, 208 Ga. App. 878 (432 SE2d 818) (1993).

(b) However, even assuming arguendo that all the evidence adduced against Smith regarding his participation in the armed robbery was circumstantial, "we find that the *quality and quantity* of that evidence were such as to point overwhelmingly to [Smith's]

guilt." (Emphasis supplied.) *Bird v. State*, 178 Ga. App. 687, 688 (344 SE2d 468) (1986). "To support the verdict, circumstantial evidence must only exclude *reasonable* hypotheses; it need not exclude *every* inference or hypothesis except that of the defendant's guilt." (Citation and punctuation omitted; emphasis supplied.) *Slater v. State*, supra at 724. See also OCGA § 24-4-6; *Robinson v. State*, 168 Ga. App. 569, 571 (309 SE2d 845) (1983). "Whether this burden has been met is a question for the jury. . . . This Court will not disturb the jury's determination unless the verdict is insupportable as a matter of law." (Citations and punctuation omitted.) *Ezzard v. State*, 230 Ga. App. 147, 149 (2) (495 SE2d 620) (1998). See also *Harris v. State*, 236 Ga. 242, 245 (1) (223 SE2d 643) (1976); *Dean v. State*, 203 Ga. App. 836 (418 SE2d 117) (1992). "Viewing the evidence of this case in a light most favorable to the verdict, we conclude that the jury rationally could have found the evidence excluded every *reasonable* hypothesis except that of the defendant's guilt." (Emphasis supplied.) *Slater v. State*, supra at 724.

(c) We also find Smith's assertion that he was convicted based upon Wilson's allegedly uncorroborated testimony to be unsupported by the record. "In Georgia, a defendant may not be convicted [solely] on the uncorroborated testimony of an accomplice. OCGA § 24-4-8. The corroboration must be independent of the accomplice's testimony and it must connect the defendant to the crime or lead to the inference that he is guilty. However, the corroborating evidence need not of itself be sufficient to warrant a conviction of the crime charged. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict." (Citation and punctuation omitted.) *Young v. State*, 213 Ga. App. 278, 279 (1) (444 SE2d 598) (1994).

As shown in the preceding subsections, Wilson's specific, extensive testimony linking Smith to the armed robbery was corroborated by substantial evidence of Smith's immediate, unexplained possession of the stolen checks, forged identification cards, and the vehicle utilized during the armed robbery. Accordingly, this enumeration is without merit.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 1, 1998 —
RECONSIDERATION DISMISSED SEPTEMBER 30, 1998.

*David J. Grindle*, for appellant.
Larry D. Smith, *pro se*.

*J. Gray Conger, District Attorney, Alonza Whitaker, Assistant District Attorney*, for appellee.